**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | § | |
| BLISS, ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No. SA-13-CV-667-XR |
| v. | § | |
| | § | |
| BIOCOMPATIBLES INTERNATIONAL | § | |
| PLC, ET AL., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered Relator's counsel's Motion to Compel Discovery (docket no. 36) and Application for Attorney's Fees (docket no. 47) and the responses and replies to each motion. After careful consideration, the Court DENIES the Motion to Compel and GRANTS IN PART AND DENIES IN PART the Application for Attorney's Fees.

## BACKGROUND

Relator Ryan Bliss brought this *qui tam* action under the federal False Claims Act ("FCA") and the laws of 28 states on July 23, 2013. Docket no. 1. Relator named as defendants Biocompatibles International PLC, a British medical technology firm; BTG, PLC, the parent corporation of Biocompatibles; Rita Medical, Inc. and Angiodynamics, Inc., the United States distributors of Biocompatibles; and 100 hospitals. *Id.* Relator, a sales employee for Rita and, later, BTG/Biocompatibles, alleged that these defendants fraudulently caused the plaintiff governments to pay for a "combination drug-device therapy known as Drug Eluting Bear Transarterial Chemoembolization, an off-label medical procedure that involves the use of a drug-eluting bead called LC Bead to deliver" certain drugs to liver tumors. *Id.* at 3. While employed

by defendants, Relator alleges he learned that Biocompatibles had not obtained certain regulatory approvals (despite its representations to the contrary), that the reimbursement codes defendants have used for billing to government programs are false and misleading, and that defendants have sold LC Bead to government-operated hospitals based upon false and misleading statements. *Id.* at 4-5.

The Department of Justice investigated for three years, after Relator brought this lawsuit. As a result of this investigation, Biocompatibles agreed, on October 12, 2016, to a $25 million civil settlement and, on November 7, 2016, to $11 million in criminal fines and a guilty plea on charges of false marketing of LC Bead. Docket no. 36 at 5. Claims against the hospital defendants were voluntarily dismissed on January 9, 2017. The only remaining defendant, Angiodynamics, then reached a $12.5 million settlement on July 10, 2018.

As to attorney fees, Relator's counsel alleges that they originally presented Biocompatibles with a claim for $1,869,069 in attorney's fees and $17,753 in expenses incurred through June 30, 2016. *Id.* This was negotiated down to $1,000,000 in attorney's fees and $17,753 in expenses. Because Relator and Biocompatibles agreed that Angiodynamics was responsible for at least half of the fee claim, Biocompatibles paid $500,000 in fees and $17,753 in expenses. *Id.* Relator's counsel now apply for a statutory fee award against Angiodynamics, pursuant to 31 U.S.C. § 3730(d)(l). The Court will first address the Motion to Compel Discovery, as Relator's counsel seeks information regarding Angiodynamics' counsel's billing, but Angiodynamics has refused requests for production of this information.

# ANALYSIS

## I.    Motion to Compel Production

Seeking information they allege is relevant to their Application for Attorney's Fees, Relator's counsel served Angiodynamics with requests for production on September 11, 2018. The requests relevant here seek the billing invoices or statements received by Angiodynamics from its counsel and the accounting records of Angiodynamics showing how much was paid in connection with these billing invoices or statements. Angiodynamics refused these requests in its responses and objections served October 11, and after a failed effort to stipulate to these facts, Relator's counsel filed a Motion to Compel Discovery. Docket no. 47. Essentially, they want to know how many hours defense counsel charged and at what rate.

Relator's counsel argues this information is relevant because Angiodynamics has challenged, in its response to the Application for Attorney fees, the hours and rates Relator's counsel seeks. Docket no. 47 at 4. Importantly, Relator's counsel already has *some* information about defense counsel's fees, as Angiodynamics told Relator's counsel the rates at which its counsel billed ("Senior Director: $670-860; Director: $520-860; Associate: $380-580; Legal Assistant: $170-250") and its total hours billed as of January 18, 2018 (4,330). *Id.* at 6. As Relator's counsel note, however, Angiodynamics has not stated how many hours were billed at each rate or how much experience the lawyers billing at each rate had. *Id.*

Under Rule 34, a party may request that any other party produce any designated documents or electronically stored information in the responding party's possession, custody, or control. FED. R. CIV. P. 34(a)(1)(B). If a party fails to produce documents requested under Rule 34, the requesting party may move under Rule 37 for an order compelling production. FED. R.

CIV. P. 37(a)(3)(B)(iv). A party that opposes the Rule 34 request must "state with specificity the grounds for objecting to the request, including the reasons." *Id*. 34(a)(2)(B); *Walters v. Sentry Link, LLC*, No. 16-383, 2018 WL 837611, at *3 (W.D. Tex. Feb. 9, 2018) ("The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable.") (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Rule 26(b)(1) sets out the scope of permissible discovery, stating that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). If the Court determines that proposed discovery is outside this scope, the Court "must limit the frequency or extent of discovery otherwise allowed by these rules[.]" FED. R. CIV. P. 26(b)(2)(C)(iii). "Trial courts are afforded substantial discretion in determining whether to grant or deny a motion to compel discovery." *Escamilla v. United States*, No. 14-246, 2015 WL 12732889, at *2 (W.D. Tex. Apr. 13, 2015). Relator's counsel bear the burden to show that their requested fees are reasonable, *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996), and a "request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Here, Angiodynamics argues that the requested production exceeds the scope of discovery set out in Rule 26(b)(1) because (1) it would reveal nothing relevant to Relator's counsel's fee motion and (2) it imposes a heavy burden relative to its benefit. Docket no. 48.

As to relevance, Angiodynamics cites as support the Fifth Circuit's decision in *McClain v. Lufkin Indus.*, 649 F.3d 374 (5th Cir. 2011). In that case, the Fifth Circuit stated that

> [n]o prior Fifth Circuit authority requires this comparison [between defense counsel's fees and plaintiff's counsel's fees], nor does common experience, because the tasks and roles of counsel on opposite sides of a case vary fundamentally. If there were logical comparability, this court's decisions would have recognized it in the *Johnson* factors or in past lodestar decisions.

*Id.* at 384. Angiodynamics argues that its counsel's "tasks and roles" in "independently investigating, managing, and representing the company in all aspects of a multi-agency government inquiry" cannot be compared to Relator's counsel's tasks and roles in "supporting False Claims Act investigations that Relator's counsel admit were led by the U.S. Department of Justice and multiple U.S. Attorney's Offices[.]" Docket no. 48 at 3. Further, to the extent the requested information is relevant, Angiodynamics notes that it has "acknowledged, to Relator's counsel and this Court, that its own counsel billed more hours in addressing all claims raised by the government's inquiry in this matter than Relator's counsel did in assisting the government attorneys and billed at higher rates than are reasonable in the San Antonio community." *Id.* at 5.

Relator's counsel argue that the benefit of this discovery depends on this Court's "opinion of Relator's Counsel's success in carrying their burden of establishing the reasonableness of their fees without reference to the defense billings." Docket no. 47 at 5. As this argument goes, if the Court considers Relator's counsel's requested fees reasonable, this discovery will have little added benefit, but if the Court does not, a review of defense counsel's billings "could tip the balance[.]" *Id.*

The Court rejects this argument and finds that the requested production would have little or no benefit to the Court's assessment of the fee request. Relator argues that the above-cited language in *McClain* suggests only that comparison of defense counsel fees is not *required*. Even reading *McClain* exactly as Relator's counsel suggest, the Court finds that comparing both side's fees would at most negligibly benefit the Court's assessment of Relator's counsel's fees,

and as such a comparison is not required the Court will not order one. There are too many confounding variables here—given, for example, the presence of multiple defendants and government intervention—for even a general comparison between defense counsel's and Relator's counsel's billings to be relevant or beneficial.

Next, as to burden, Angiodynamics argues that its billing records contain "significant attorney-client privileged information and attorney work product," so production of "even a limited and redacted portion of those privileged records would be far more burdensome and expensive than is warranted by the negligible benefit they may provide to Relator's counsel or the Court in resolving this matter." Docket no. 48 at 2, 4. In reply, Relator's counsel argues that any burden can be avoided because they "have offered to limit their discovery to limit their discovery to a simple listing of the defense lawyers who provided services in the case, the year each was admitted to the bar, the number of hours each worked on the case and their respective billing rates." Docket no. 49 at 1.

While this pared-down discovery likely does remove most of the burden—particularly the burden of redaction—it also calls for little new information beyond what is already known: the rates defense counsel charged and the total number of hours billed. The Court assumes, for the sake of argument, that it would be better able to decide whether Relator's counsel's billings are reasonable if it could also gauge the the reasonableness of defense counsel's billings. Even under this assumption, though, this pared-down request would not indicate the work that defense counsel's time entries corresponded to, and thus the Court could not properly assess defense counsel's billings. The pared-down request, then, limits the burden but minimizes any potential relevance, and the original request imposes on defense counsel a burden that is not outweighed

by its minimal benefit. Accordingly, Relator's counsel's Motion to Compel Discovery is DENIED.

## II.    Motion for Attorney Fees

The Court turns now to Relator's counsel's Application for Attorney's Fees. Relator's counsel move for statutory attorney's fees as a prevailing party under Federal Rule 54, which provides that a prevailing party can move for attorney's fees but must specify the relevant statute or other grounds that authorizes them. *See* FED. R. CIV. P. 54(d). Neither side disputes that Relator is a prevailing party and, here, the federal False Claims Act allows a relator to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorney's fees and costs." 31 U.S.C. § 3730(d)(1). To decide what award is reasonable, the first step is to calculate the lodestar, which is the number of hours reasonably spent on the litigation multiplied by an attorney's reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999). Then, after determining the lodestar amount, the court considers whether the lodestar should be adjusted, depending on the circumstances of the case and the factors the Fifth Circuit identified in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974).

### A.  Lodestar

Relator's counsel's fee request, as clarified in their reply, is "$927,651 based upon the Valeo Healthcare Law Survey for San Antonio, after a 17% billing judgment discount." Docket no. 45 at 4. Included in this proposed lodestar are 2,493.10 billable hours, which include time that has accrued since the Biocompatibles settlement and extends to October 15, 2018. Docket no. 45-5. Relator claims total fees and expenses of $1,635,404 and arrives at the final figure of $927,651 after first applying an offset of $517,753 for the amount already paid by

Biocompatibles and then a 17 percent billing discount. Docket no. 45-8. In support of this request, Relator's counsel submit the declarations of lead counsel Paul Lawrence (docket nos. 45-23 and 45-24) and Jeffrey Newman (docket no. 45-25).

### a. Hours

"There is a strong presumption of the reasonableness of the lodestar amount," but those "seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "The court should exclude all time that is excessive, duplicative, or inadequately documented[.]" *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Hours can also be reduced for documentation that is "vague" or "brief," *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), or that is "very brief" and "not illuminating as to the subject matter," *Leroy v. Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990).

Angiodynamics argues that Relator's counsel's hours should be reduced because they are vague or inadequately documented and because they are excessive or redundant. Docket no. 41. First, Angiodynamics argues that many entries are vague and non-specific. *Id.* at 5-6. As a sample, Angiodynamics lists entries such as "email client," "legal research," "conference call," "analysis of case," "lunch with client," and "work on complaint." *Id.* at 6. As further examples, Angiodynamics notes that Newman charges about 50 hours for "review email(s)" and 25 hours for "tel conference" with Relator or co-counsel, Reeves charges for vague statements like "conference call" and "numerous emails among team," and Lawrence charges over 70 hours for entries like "work on complaint." *Id.* These examples and others are similar to time entries that

the Fifth Circuit has found vague and insufficiently detailed. *See, e.g.*, *Walker*, 99 F.3d at 773 (disallowing entries like "library research," "analyzing documents," and "phone interviews"); *Kellstrom*, 50 F.3d at 326 n.11 (disallowing entries like "revise memorandum," "review pleadings," and "review documents"; *Leroy*, 906 F.2d at 1080 (disallowing entries like "Work on Brief," "Continue work on brief," and "Review for Oral Argument").

Angiodynamics also includes 39 pages of line-item objections to specific time entries and the most common listed objection is "vague." Docket no. 41-1. This document is both over- and under-inclusive, as some of the listed entries are sufficiently detailed, while Angiodynamics omits some vague, non-specific entries. Still, after independent review of Relator's counsel's time entries, the Court concludes that Angiodynamics' listed objections are reasonable, overall, and align with the Court's view of the time entries.

Second, Angiodynamics argues many of Relator's counsel's time entries are excessive or redundant. Nearly all the hours at issue—2,396.97 of 2,493.10—are charged by two attorneys, Lawrence and Newman. Lawrence's declaration persuasively argues that a case like this requires "at least one lead counsel who can understand and reconcile complex and sometimes conflicting interests between and among the various parties to, or interested in, a *qui tam* action[.]" Docket no. 45-23 at 6. But it is unclear why two lead counsel from two law firms were necessary. It is also unclear why these two lead counsel were needed to perform more than 90 percent of all work on the case, as opposed to less-experienced attorneys who could perform the same work at a more reasonable hourly rate. Lawrence states that "[t]he guidance of an experienced *qui tam* litigator increases the likelihood of interesting the government in the case, and thus the likelihood of a successful outcome." *Id.* Cases like this doubtless require many hours of work, but billing 90-plus percent of all hours is far more than guidance. As one example of this

inefficiency, Angiodynamics notes that Newman spent 86.6 hours drafting the *qui tam* disclosure statement and Lawrence spent 58 hours drafting the complaint, even though "they are predicated on the same facts and frequently are substantially identical." *Id.* at 7. As another example, Angiodynamics notes that Newman charges over 100 hours for review of emails and attachments with no follow-up response. *Id.* This kind of inefficiency and lack of billing judgment (particularly since Lawrence and Newman seek the same high billing rate for all their hours, even though their work includes many tasks typically handled by cheaper attorneys) justifies a time reduction.

On the other hand, many of Relator's counsel's time entries are proper and include sufficient detail, and much of the fee request has merit. In addition to the many entries that have enough detail for the Court to decide their reasonableness, Lawrence also explains away the vagueness of some cursory time entries. Docket no. 45-30 at 7 ("On three days, my time entries say nothing more than 'work on complaint' because I had already described in my time records in detail all of the above work that went into preparing myself for drafting the complaint and it would have been duplicative for me to again describe in detail the various aspects of my research as they were incorporated into the complaint.").

Also, Angiodynamics argues that Relator's counsel have not properly segregated the fees related to Angiodynamic from those related to Biocompatibles or BTG. The Court agrees that the vagueness of many entries makes it difficult to ascertain whether work was done on a matter unrelated to claims against Angiodynamics. It is also true that Angiodynamics was not criminally charged, as Biocompatibles was, but decisions as to collateral criminal matters are made by the government, not Relator's counsel. From Relator's perspective, the case was brought against several defendants based on the same underlying conduct, for which Angiodynamics and

Biocompatibles entered into settlement agreements. These settlements make Relator a prevailing party and entitle his counsel to statutory attorney's fees under 31 U.S.C. § 3730(d)(1). As Angiodynamics points out, it appears Relator's counsel have charged for time spent discussing this case with government attorneys and investigators, but their explanation—that these conversations generated important information for the civil FCA case—is plausible. *See* docket no. 45-30 at 10.

The Court is aware of no authority directly addressing whether fee requests must be segregated among multiple defendants in an FCA case. On the other hand, the Fifth Circuit has "recognized that when a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, much of counsel's time will be devoted to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *United States v. Cmty. Health Sys., Inc*., 2015 WL 3386153, at *6 (S.D. Tex. May 4, 2015) (citing *United States ex rel. Longhi v. Lithium Power Technologies, Inc*., 575 F.3d 458 (5th Cir. 2009). *Longhi*, relying on the Supreme Court's decision in *Hensley*

*Longhi* is not exactly on point, as it involved multiple claims—only some of which were successful—against a single defendant, while this case involved multiple defendants. This Court, though, does not find Angiodynamics' cited authority in support of its argument any more persuasive. Angiodynamics cites a Sixth Circuit case as "holding that a relator is not statutorily entitled to attorney's fees from an FCA defendant for claims/matters that are 'collateral' to the FCA litigation, including where the defendant is not a party to that other litigation." Docket no. 41 at 8. (citing *United States ex rel. Taxpayers Against Fraud v. Gen. Elec.*, 41 F.3d 1032, 1045-46 (6th Cir. 1994)). The collateral matter in that case, however—which the district court

improperly included in the fee award—was collateral litigation between the relator and the government regarding the amount of the relator's share in the recovery. *Id.*

Here, in contrast, the affidavits submitted by Relator's counsel indicate that their time was devoted to the litigation as a whole. Even to the extent that any time entries refer to work done only on the Biocompatibles criminal investigation, Lawrence states that

> [a]ny experienced *qui tam* lawyer knows that a criminal prosecution against any participant in a fraud against the government substantially enhances the odds of a favorable civil settlement against that defendant and all of its co-conspirators. No member of the conspiracy wants to try a civil case after there has been an admission of criminal culpability by any one of those jointly and severally liable for the fraud. Here, the government's strategy was to obtain a criminal plea against the co-conspirator who dealt directly with the FDA—Biocompatibles— and then use that plea to obtain civil settlements from both Biocompatibles and AngioDynamics. The work that the Relator and his counsel did to obtain the Biocompatibles plea was therefore crucially important to obtaining the settlement with AngioDynamics.

Docket no. 45-30 at 10. Persuaded by this argument, the Court finds that a failure to distinguish between claims against the several defendants does not justify an across-the-board percentage decrease in hours.

Still, the vagueness of many entries and the excessiveness and redundancy of others do justify such a decrease. Relator's counsel propose a 17 percent reduction of all hours to account for billing judgment, while Angiodynamics proposes a 45 percent reduction. A 17 percent reduction would not sufficiently account for the vagueness and redundancy in the billings, which make it difficult for the Court to assess their reasonableness, despite the detailed affidavits Lawrence and Newman have submitted. The Court has reviewed Relator's counsel's time entries and finds that a 30 percent reduction results in a reasonable number of hours. *See Hensley*, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated or simply reduce the award to account for the limited success. The court necessarily

has discretion in making this equitable judgment.") After applying this reduction, the hours for each attorney are reduced as follows: for Lawrence, from 1,241.32 to 872.77; for Newman, from 795.40 to 556.78; for Reeves, from 320.3 to 224.21; for Siegel, from 29.45 to 20.62; for Hargrove, from 5.0 to 3.5; for Jacobson, from 29.70 to 20.79; and for Izzo, from 11.0 to 7.7. The paralegals' hours are also adjusted: for Cox-Kahey, from 54.33 to 38.0; for Hewlett, from .3 to .2; and for Walker, from .8 to .6.

### b. Rates

Next, the Court must determine the applicable rate, keeping in mind that the fee award, in the end, must "only be reasonable and sufficient to attract competent counsel." *U.S. ex rel. Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396, 400 (5th Cir. 2016) (citing *McClain*, 649 F.3d at 381). "To that end, the court should base its award on the prevailing market rates in the relevant community," which has been "consistently interpreted" to mean "the local geographic community." *Id.* The court also does not need to accept the rates requested, even where reasonable and within prevailing market rates, if the court explains why it chose different rates. *Id.*

The applicable rates are a central point of contention between the parties. Relator's counsel originally argued in their Application that the Court should apply the market rates of Washington, D.C. Their reply, however, states that "[t]he amount now sought through the date of this filing is $927,651 based upon the Valeo Healthcare Law Survey for San Antonio, after a 17% billing judgment discount." Docket no. 45 at 5. The Court understands this language, and the reply brief generally, as Relator's counsel abandoning their argument for D.C. market rates. Accordingly, the parties are agreed that San Antonio is the relevant community from which to

draw the applicable rates. The issue for the Court to decide is whether to apply rates of its choosing or the rates offered by the parties.

Relator's counsel argue that the Valeo Healthcare Attorney Hourly Rate Report ("Valeo Rate Report") reflects the customary rates of San Antonio, Texas and should be applied here. The relevant attorneys are Jeff Newman, Charles Siegel, Dan Hargrove, Kay Reeves, and Paul Lawrence, who have more than 24 years' experience; Loren Jacobson, who has between 7 and 23 years' experience; and Anne Izzo, who has between 5 and 7 years' experience. Relator's counsel also seeks payment for the work of paralegals Karen Hewlett, Vivian Cox-Kahey, and Toya Walker. The Valeo Rate Report, applied to Relator's counsel, would result in hourly rates of $662 for the 5 attorneys with 24-plus years of experience, $590 for the attorney with between 7 and 23 years of experience, $383 for the attorney with between 5 and 7 years of experience, and $150 for the 3 paralegals. Docket no. 45-8.

The Lawrence declaration states that the requisite level of skill necessary to litigate *qui tam* cases and the risk inherent in contingent-fee arrangements limit the choices in potential counsel. Docket no. 45-23. Because of this and other factors, Lawrence states "it is truly a national marketplace when it comes to finding and retaining experienced litigators to represent relators" and thus "[t]he rates that are reasonable for *qui tam* counsel are largely the same nationwide and do not vary substantially based upon the location where a case is filed." *Id.* at 8. In their reply, Relator's counsel also submit the declarations of *qui tam* lawyers Judge John Clark of San Antonio and Patrick O'Connell of Austin, both of whom testify that the rates in the Valeo Rate Report are reasonable. Clark states that he is "familiar with the rates charged by my firm and others representing relators in False Claims Act cases in San Antonio and in other Districts in Texas, as well as in various other Districts around the country, and it is my opinion that the

rates charged by Waters & Kraus and the Law Office of Jeffrey Newman in this case are comparable to those rates and are reasonable." Docket no. 45-45. O'Connell states that he charges $850 per hour for *qui tam* matters in the Western District of Texas and that "[t]he rates charged by the attorneys from Waters & Krause and the Law Office of Jeffrey Newman are well within the range of rates charged by *qui tam* practitioners around the country for such experienced attorneys, and are also well within the range of rates charged by *qui tam* practitioners in the Western District of Texas, of which there are only a handful, myself included." Docket no. 45-46.

Angiodynamics argues, however, that the Valeo Rate Report's reliability is suspect, given that Relator's counsel cite no court in the Fifth Circuit that has applied it and it is based on data compiled from law firms globally—not isolated to firms in San Antonio. Docket no. 41 at 12-13. Angiodynamics also submits the declaration of George Spencer, a San Antonio attorney who states that local San Antonio rates are significantly lower than those set out in the Valeo Rate Report. Docket no. 41-2.

Given the parties' conflicting arguments and declarations as to the appropriate San Antonio market rate, the Court will reference the State Bar of Texas Department of Research and Analysis Hourly Rate Report ("State Bar Rate Report"), which uses a survey of Texas attorneys to determine average hourly rates in different areas of Texas. "Judges in the San Antonio Division regularly take judicial notice of the [State Bar] Rate Report." *Alex v. KHG of San Antonio*, LLC, 125 F. Supp. 3d 619, 624–25 (W.D. Tex. 2015) (collecting cases); *see also Alvarez v. AMB–Trans Inc*., No. 5:11-CV-179-XR, 2013 WL 789238, at *2 (W.D. Tex. Mar. 4, 2013); *Rodriguez v. Mech. Tech. Servs*., No. 1:12-CV-710-DAE, 2015 WL 8362931, at *9 (W.D. Tex. Dec. 8, 2015).

The median hourly rates for San Antonio attorneys in the most recent State Bar Rate Report, published in 2015, is $250. Docket no. 41-4 at 14. Broken down by practice area, the San Antonio median for commercial litigation is $263. *Id.* at 16. The complexity of *qui tam* work, as described by Lawrence and Newman, justifies an enhanced rate, and Angiodynamics' proposed rates, proffered in the Spencer declaration, bridge the gap between the State Bar Rate Report and the Valeo Rate Report. Spencer states that local community rates are significantly lower than those in the Valeo Rate Report, but that the State Bar Rate Report is a valid and reliable source. Docket no. 41-2. "Taking the media market rate information from the Texas Bar Report into consideration," Spencer states that "it is my opinion that the prevailing hourly rates for litigation/trial attorneys in the San Antonio Division of the Western District of Texas during 2015 ranged from $150.00 per hour to up to $450.00 per hour depending on the individual attorney's experience, reputation, and accomplishments, and the nature of the litigation." *Id.* at 5.

Spencer states that he reviewed Relator's counsel's representations as to their qualifications and found that "none of Relator's counsel possesses such unique and superior skill, ability, experience, and reputation, beyond that of litigation counsel in San Antonio in general, that they could command a rate higher than the $450.00 per hour upper rate charged by trial attorneys in San Antonio." *Id.* at 7. Only Lawrence and Newman "appear to have the lengthy specialized experience that could justify the maximum $450.00/hour billing rate for civil litigation attorneys in San Antonio," Spencer stated. Thus, Spencer and Angiodynamics propose the following hourly rates: $450 for Lawrence and Newman, $415 for Reeves and Siegel, $350 for Hargrove and Jacobson, $285 for Izzo, and $130 for the paralegals. *Id.* at 6-8.

Although the Court notes Relator's counsel's argument that Spencer does not have experience in *qui tam* cases, Spencer does have experience as an expert witness on the

reasonableness of attorney's fees and as a civil litigation attorney in San Antonio. Regardless of Spencer's exact experience, the Court agrees with his assessment that the skills and experience "required to successfully navigate, for example, class action or malpractice litigation are at least equal to those required to negotiation a *qui tam* settlement as described by Mr. Lawrence." *Id.* at 8. The Court also agrees with Spencer that "[a]lthough a *qui tam* case may justify an enhancement of fees, there is no basis to justify an enhancement of fees beyond the upper prevailing rate for other specialized civil litigation in San Antonio." Angiodynamics' proposed rates appear to the Court to be a reasonable compromise that accords with fairness considerations and the conflicting arguments between the interests of out-of-state counsel and the Fifth Circuit's repeated direction that local community rates are generally the appropriate gauge. The Court finds that these rates are reasonable, given Relator's choice of a venue and the Court's view that this case did not present particularly demanding or novel legal issues.

For the reasons stated above, the Court finds that Relator's request is in some respects unreasonable. After careful review of the applicable law and the relevant filings, the Court finds that a reasonable lodestar is $760,641.95. This lodestar amount is based on the following rates and hours, adjusted in the Court's discretion according to the reasons stated above:

| Timekeeper | Adjusted hours | Adjusted rate | Total reasonable fee |
|---|---|---|---|
| Paul Lawrence | 872.77 | $450 | $392,746.50 |
| Jeff Newman | 556.78 | $450 | $250,551.00 |
| Kay Reeves | 224.21 | $415 | $93,047.15 |
| Loren Jacobson | 20.79 | $350 | $7,276.50 |
| Charles Siegel | 20.62 | $415 | $8,557.30 |
| Anne Izzo | 7.7 | $285 | $2,194.50 |
| Dan Hargrove | 3.5 | $350 | $1,225.00 |
| Vivian Cox-Kahey | 38.0 | $130 | $4,940 |
| Toya Walker | 0.6 | $130 | $78.00 |
| Karen Hewlett | 0.2 | $130 | $26.00 |

**B.  *Johnson* Factors**

Next, the Court must determine whether to adjust this lodestar. It can be adjusted after considering the following factors set out in *Johnson*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Sierra Club v. Energy Future Holdings Corp.*, 2014 WL 12690022, at *3 (W.D. Tex. Aug. 29, 2014) (citing *Johnson*, 488 F.2d at 717-19). "In applying [the *Johnson* factors], the district court must explain the findings and the reasons upon which the award is based. However, it is not

required to address fully each of the 12 factors." *Id.* (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted)).

Here, neither side argues for a lodestar adjustment. This means the Court has little or no information on which to apply several *Johnson* factors, including the preclusion of other employment by the attorney due to acceptance of the case, the attorney's customary fee, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. The Court does know that the litigation has lasted several years, that Relator's counsel undertook the case on a contingent basis, and that the case ended in settlement. These factors alone do not justify a lodestar adjustment, however, and the Court considered the remaining factors—the time and labor involved, the novelty and difficulty of the questions, and the skill required to perform the legal service properly—in determining the lodestar. When *Johnson* factors are considered in setting the lodestar, it is not appropriate to consider them again in adjusting it. *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013). Thus, the Court finds that there is no basis to adjust the lodestar.

### C. Joint and Several Liability

Finally, Relator's counsel argue that Angiodynamics and Biocompatibles are jointly and severally liable for the entire fee amount. The Fifth Circuit allows a district court to "impose joint and several liability in setting fees." *Walker v. United States HUD*, 99 F.3d 761, 772 (5th Cir. 1996). However, if joint and several liability leads to inequitable results, it is reversible. *Id.* In *Walker*, the Fifth Circuit found that the imposition of joint and several liability as to the fee was appropriate because there was a "single indivisible injury" and each party played a substantial role in the litigation. *Id.* at 773. Thus, to determine whether Angiodynamics and Biocompatible are jointly and severally liable for attorney's fees, the Court must determine

whether both co-defendants "played a substantial part in the litigation and caused a single indivisible injury." *See Rodriguez v. Mech. Tech. Servs.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *9 (W.D. Tex. Dec. 8, 2015) (imposing joint and several liability for fees, subject to a credit for the amount paid by a co-defendant that settled earlier).

Relator's counsel argue Angiodynamics and Biocompatibles are jointly and severally liable because they settled based upon the same "covered conduct" described in their respective settlements and "Biocompatibles' civil liability for false and off-label marketing was in large part based upon the acts of Angiodynamics as its U.S. distributor and the provider of its sales force." Docket no. 45 at 4. Newman, in his supplemental declaration, states that "when we researched and analyzed the facts of this action against Biocompatibles, RITA, and AngioDynamics, the facts verified that all three were culpable for the wrongdoing" and "we could not curb the time we spent on researching, analyzing, and preparing information based on which corporation we felt might be more culpable." Docket no. 45-26 at 5.

Angiodynamics does not directly address joint liability, but it does argue that Relator's counsel did not adequately cull from their fee request billing records for work unrelated or collateral to Angiodynamics. The Court addressed this argument in setting the hours portion of the lodestar, but Angiodynamics has not argued that it played an insubstantial part in the litigation or that the relevant injury was divisible. The Court, then, finds that joint and several liability for attorney's fees is appropriate here. As both sides have noted, however, Angiodynamics is entitled, in fairness, to a $500,000 offset for fees and $17,753 for expenses already paid by Biocompatibles. Accordingly, the amount for which Angiodynamics is responsible is reduced from $760,641.95 to $242,888.95. As *Walker* indicates, Angiodynamics can seek contribution from Biocompatible if it considers this amount disproportionate.

**D. Costs**

The Court has broad discretion in determining an appropriate award of costs. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). The Court gives "careful scrutiny" to the items proposed by the prevailing party, *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995), and can decline to award costs where the expenses are not deemed to have been "reasonably necessary" to the litigation, *see, e.g., Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257–58 (5th Cir. 1997).

Here, neither side directly argues for or against Relator's counsel claimed costs of $18,560. Although Angiodynamics and Biocompatibles are jointly and severally liable for fees and costs, the Court will not allow double recovery of costs and expenses, especially where it is as readily identifiable as in this instance. In the settlement with Biocompatibles, Relator's counsel initially sought $1,869,069 in fees and $17,753 in costs, figures that were eventually reduced to $1,000,000 in fees and $17,753 in costs. Working under the assumption that Angiodynamics was also responsible for fees, Biocompatibles paid $500,000 in fees and $17,753 in costs.

Given these figures, the only reasonable inference is that Relator's counsel valued their costs and expenses at $17,753 at the time of the Biocompatibles settlement (though approximately June 18, 2016), which Biocompatibles paid in full. Now Relator's counsel seek an additional $18,560 in costs and expenses from Angiodynamics, but the expense report submitted here dates to the beginning of this litigation in 2013 and there is no indication that Relator's counsel omitted the expenses Biocompatibles paid. On the record at hand, the Court will not award costs and expenses incurred before the Biocompatibles settlement in June 2016, as the risk of double recovery is too great. This leaves expense-report entries dating from July 31, 2016 to

August 31, 2018, which total $814.71. In total, Relator's counsel are granted $243,703.66 in attorney's fees, costs, and expenses.

## CONCLUSION

Accordingly, the Court DENIES Relator's counsel's Motion to Compel Production and GRANTS IN PART AND DENIES IN PART Relator's counsel's Application for Attorney's Fees.

SIGNED this 1st day of January, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE